Case number 23-7158. Alexander Gallo, Appellant, versus District of Columbia, a Municipal Corporation. Mr. Seedleck, amicus curiae for the Appellant. Mr. Gallo for the Appellant. Mr. Girton for the Appellee. Good morning, Your Honor. May it please the Court. William Seedleck, court-appointed amicus supporting reversal. I'll reserve two minutes for rebuttal. The right to exclude is foundational to any conception of private property. As the Supreme Court has repeatedly made clear, government action eviscerating that right creates a taking under the Fifth Amendment. Here, for nearly a year and a half, the District both prohibited landlords from evicting breaching tenants and even barred them from initiating eviction actions in court. On the facts alleged, the District's moratoria created a taking for three primary reasons. First, as the Federal Circuit explained, by prohibiting the eviction of nonpaying tenants, the government created unwanted occupation of private property. Second, this occupation indefinitely deprived the Appellant of any ability to regain control over his property. And third, the moratoria prevented the Appellant from seeking any remedies that could have led to his regaining control of his properties or receiving compensation during the moratoria's duration. For these reasons, the District Court's dismissal of the takings claim should be reversed, and I welcome the Court's questions. Was the filing moratorium absolute? Did it have no exceptions initially for that first year? For the filing of a summary eviction action, yes. And then eventually they did incorporate exceptions for willful or wanton destruction of property or potential danger to other residents. For the filing? For the filing moratorium, which that coincided with the same exception that was added to the eviction moratorium. But there was no moratorium or bar to filing a civil ejectment action, correct? So yes, for filing the civil ejectment action, that's correct. However, the eviction moratorium still would have prevented the actual suit from reaching a successful judgment, just because for any tenant, for any leaseholding tenant, it would have been protected by the Rental Housing Act. But how would, with respect to the foreclosure unit, how would that be construed properly for that person to be a leaseholding tenant? There was no lease. Yes, there is no lease. And so I submit, as an amicus, that there's no takings claim as to the that there was a physical taking for the, at least for the delinquent units. What about, I mean, did Mr. Gallo state a claim, a takings claim in his complaint? Because it's not clear, arguably from the complaint, whether he was actually denied compensation. So, Your Honor, if you actually look at the complaint, and this would be on A194, he does make, he does seek both a declaratory and what he calls nominal damages, $5 in nominal damages. And so even if the $5 were all that he were seeking under cases like Loretto, as well as Cedar Point, that would still be sufficient. But something is not a taking if there was just compensation. Well, there... So that you can't, you haven't stated a claim. I mean, just because you're also asking for nominal damages doesn't mean you've stated a takings claim. It's not clear that he hasn't, that he has foregone stating a takings claim for just a nominal amount of money. So, Your Honor, if he does have a statement that says, quote, the taking is whatever the theft turns out to be, that could potentially be read to say that he's still seeking any potential payments that may not have been received in full, or even could potentially be for the, for time value of money, perhaps, which would also be recoverable as a taking. So we should infer from this language that he's alleging there was no compensation, or not just compensation. That there might not have been full just compensation, correct, Your Honor, in which case the claim could go forward, and then this would just become an issue for valuation discovery. And, of course, you know, we are dealing here with a pro se complaint, which, of course, gets liberal construction. And even Uzabunim itself says that the damages awarded by default will be those, will be those, the nominal damages or the requested damages stated. And if he proves that he's entitled to more, then that would be for the court to handle going towards the judgment. So speaking to the takings claim itself, we submit that there was, that this, that the moratoria did give rise to a physical taking. If you look at specifically at Loretto, it describes how a physical occupation occurs because the owner, quote, the owner has no right to possess the occupied space himself, and also has no power to exclude the occupier from the possession and use of the space. We submit that that, that that effectively is what happened here because Mr. Gallo had no means of being able to remove his tenants for about, for allegedly six months. And I see that I'm getting into my rebuttal time unless the court has further questions. I'll, I'll return on rebuttal. All right. Thank you. Thank you. Mr. Gallo, we'll hear from you. Good morning or good afternoon. I'm Alex Gallo. May it please the court. I'd like to reserve all my time for rebuttal. So unless there's any pressing questions, I'll let the district proceed. All right. Just so you know, if rebuttal is meant to be rebuttal, so if you do that, you can only respond to anything that the district says. You can't raise any new points that haven't been discussed. On that, then I'll just respond to Amicus briefly. Three things I'd like to respond to. There was a statement that ejectment actions were permitted under the Landlord-Tenant Corrections Regulation. That was disallowed by the state court, both practice and in order. So the suit that was filed concerning the foreclosure unit was construed as an ejectment action by the state court in Landlord-Tenant Branch and refused. The second point is the no formal lease agreement is true from an express contract perspective. It's not necessarily true from an implied contract perspective. And I did cite the Federal Circuit, I think it's called Niagara, that says when someone is in a house not paying, there is an implied contract for the rent. The third point is no taking if no compensation. This is a nebulous area. What I'm alleging in the complaint is that a declaratory judgment should still be ripe, even in situations where the breach of lease was not for nonpayment. So there are behavioral breaches, there's smoking in the unit, things like that. Did you receive compensation from the District of Columbia for the delinquent leases? At what point in time is the court's question referencing? At any point in time? Yes. For some of the people a year and a half after the taking began, what I allege, there was a rent relief program called Stay DC. It was created one year after the moratorium went into effect. So my position is where that compensation did come, it is unconstitutionally late and it wasn't provided with the moratorium statute. And no interest was made in that. All right. Anything else before we hear from the government? I don't. Thank you for your time. I'll return for rebuttal. Thank you. Thank you. All right. Mr. Gurdon? Yes. Good afternoon and may it please the court, Jeremy Gurdon for the District of Columbia. The court should affirm the district court's dismissal of Mr. Gallo's second amended complaint, which fails to state a claim under the contracts or takings clause for multiple independent reasons. I think it makes the most sense to briefly discuss the areas where we agree with the court appointed amicus before reaching the issues where we disagree. As to the foreclosure unit, the amicus and the district agree that Mr. Gallo has no viable claims on the contracts clause because he does not allege that he had a contract that was impaired and under the takings clause because the ejectment remedy was available throughout the pandemic and throughout the moratorium's existence. So he still had a remedy to eject the trespasser in his unit and he could have evicted that person at that time, but he chose not to take that remedy. I also note that he still had damages remedies also available throughout the as well. As to the other units, the amicus agrees with us that Mr. Gallo does not state a contracts clause claim specifically because there's an absence of particularly pleaded facts about the leasing contracts themselves. That's from 26 of the reply brief. I think this goes to your question, Judge Rao, about whether we have enough information here to state a takings claim because we just don't have any details about whether Mr. Gallo actually had leases with individuals and as he said today for the first time that he actually was compensated after the fact. That's a new piece of information that we didn't have until today. One of the things that I was thinking about is if we were to disagree with the district court about a contracts clause issue, you know, whether you could have a contracts clause issue under 1983 or whether this was a physical taking, is the appropriate approach for us to send it back to the district court to let Mr. Gallo have another opportunity to amend the complaint? I mean, there are of course cases where we, you know, we review failure to state a claim de novo. We could just dismiss the complaint. But I wonder where the district court, if we were to conclude that the district court had misunderstood the law, what's the appropriate? Well, I think it would depend a little bit about the nature of the court's decision and what was misunderstood. But I think it's important to remember here that we're on the third complaint at this point. And after the second complaint, Judge McFadden instructed Mr. Gallo to provide additional details specifically about these other units that Amicus says he has a claim about and to explain what injury he suffered and the, you know, what the details were about these tenants. But I do wonder if like when an instruction like that is given, if the district court was misunderstanding the legal requirements, perhaps those instructions for how to amend the complaint are deficient, especially for a pro se plaintiff. Well, I think, I think all of Judge McFadden's decisions show a real care for the pro se pleading standard. But I also think that Amicus agrees with us on the contracts clause claim completely. So I don't think that there's any potential error as to that. I don't think you need to reach the 1983 question as we agree with Amicus as well. So I think you can affirm on other grounds there. But as to the physical taking claim, and I'm happy to address the merits of that, I don't think there's any error there either in Judge McFadden's reasoning. He correctly identified that the Supreme Court case in Yee is what is controlling when you have a landlord-tenant relationship. And Yee says explicitly that the invitation to the invited tenants is what makes the difference between a physical takings claim and a regulatory takings claim. And it says the line which separates this case from Loretto, which is a physical takings case, is the unambiguous distinction between a lessee and an interloper with a government license. And in this case, the district was regulating the relationship between existing tenants who had been invited into the property and landlords. It was not inviting on its own new people to come into someone's property in the way that Cedar Point was dealing with. And it wasn't giving them the affirmative right to be present on the property without the obligation to pay rent. Right. So my question is, though, if we were to disagree that Yee was the right framework and we thought that there was a physical taking, then wouldn't an amended complaint be necessary to state the elements of that physical taking? I think they would. But in that case, you'd be sending it back regardless for further proceedings. So the trial court would be within its discretion to kind of decide whether it needed an amended complaint or not. I think even if you disagreed with the trial court in our reading of Yee, uh, the current complaint does not have enough information. Right. So my question is, should we say that on appeal here, right? That even if we, you know, not reached, we just say there's a failure to state a takings claim. Yes, I think you should. And I think there's a few key details that are missing here that are really important. One of them is that he does not allege whether or not he was compensated. Today at the stand, he said that he had been compensated by the district. So that's a really important detail to include in the complaint. He also doesn't allege clearly that he actually owns any of these properties rather than manages them. He doesn't allege that he had leases with the tenants that were bona fide such that they were actually covered by the moratorium. Um, he does not allege whether or not the tenants themselves paid back any late rent or how much money that was. Um, and I think those details are necessary because the district has to be able to effectively answer the complaint and respond to these allegations. And I don't think we could do that unless we understand kind of what, what properties are we talking about? What is the potential taking here? So I think even if the court were to disagree, I think it should state that the current complaint is just fails to state a claim. Um, and that he had three opportunities to clarify his allegations. And he was given specific instructions about how to do that kind of irregard, you know, irrespective of the Cedar Point issue and didn't provide those details. Um, I would like to say one additional point about the amicus's argument about Cedar Point. I think amicus is really overreading Cedar Point to an extreme degree that would create real problems for other rental housing regulations. Um, he said in his, uh, statement to the court today that it was about anytime a landlord had unwanted occupants. But if the rule is that anytime a landlord determines that their tenants are no longer wanted, that the government has forced upon them a physical taking, that would really eviscerate a lot of landlord tenant protections, including the protections against non-discrimination, which are when a landlord doesn't want to rent a property to a acquiring them to lend, uh, their property to someone that they don't want to. And no one has ever said that that would be a physical taking. I think it would also take out all rent control statutes, um, because those prohibit a landlord from charging a higher rent or to a different tenant who's willing to pay a higher rent than the current tenant. Um, and I think it would also, um, and I think the Cato amicus brief actually makes this point quite clear that that is one thing that would have to fall, um, from on pages 14 to 18. Um, I also think it would squarely conflict with the Supreme court decision in block from a hundred years ago where the court allowed, uh, the district to extend leases during world war one. Um, so that was tenants that the landlord otherwise would want to evict, but they were forced to continue having them at the same rate due to the emergency. And the court said that that was not a per se taking. So again, that would be in conflict with the rule that they're proposing today. Um, and last I would say would also conflict with the Florida power case, which is discussed in ye where the government actually reduced the rent that utilities could charge, uh, for leasing portions of their utility poles. So that wasn't even just keeping it at the same rate like block, but actually the government reduced the rate significantly and still required them to, uh, allow the essentially tenants that they had already invited on to, to use the property. So I think all of those cases would need to be overruled, uh, before the court could conclude that this was a physical taking. If is it correct to read the filing moratorium as not containing any exceptions for that first years? I think that is correct, except to say that the ejection action remained available to everyone. It wouldn't have allowed someone, as Amica said, to actually conduct an eviction, but they could have gotten a judgment of possession, uh, through the traditional ejection action, even for a traditional tenant. Um, so so that major exception of the common law ejection action remained, uh, but the, what could they do with that judgment possession? So they could include in that, uh, request for damages. So they could get a damages judgment as well that they could potentially collect on. Um, they would have the judgment ready for when the eviction moratorium lifted, uh, if they participated or at least applied to the state program beginning in October of 2021, they could have conducted an eviction, uh, kind of earlier than other landlords would be able to do so during the phasing period. So it did give them certain rights, uh, that would permit them to both regain possession of the property and get damages for any, uh, rent that were in arrears, uh, during that period. So unless the court has any further questions, uh, we would Two minutes for rebuttal. Mr. Seidlich. Thank you, your honor. Just, just a few points in rebuttal. Um, first with respect to traditional, um, landlord tenant regulations, we submit that what makes, uh, the moratoria here fundamentally different from, uh, traditional regulations, which, uh, would spare, uh, traditional regulations of the sort of takings analysis, uh, that this case would call for would be the fact that in a under a traditional regulation, the landlord would still have the ability to, um, seek an eviction, seek to remove, um, a tenant for noncompliance with the lease. And specifically, if you look at the, uh, second circuits, recent, uh, opinion upholding the, uh, New York city's, uh, uh, uh, that limitations on the termination of a tenancy, uh, do not affect a taking so long as there is a possible route to an eviction. And here that possible route, uh, we submit was, was, um, was prevented for about a year and a half. Um, with regard to, uh, the collection of the judgment, uh, there still would have been the debt collection moratorium, which during the would have prevented actually, uh, collecting the debt, uh, from, from a tenant. And then also with respect to the complaint itself, uh, Mr. Gallo with each successive complaint that he filed, uh, did a fairly good job of responding to the district court's concerns. And so if you, um, were to send this case back with some instruction, I think he would actually benefit from that in, in, uh, better stating, uh, a claim on remand. And so unless the court has further questions, um, I would ask you to reverse. Thank you. Mr. Gallo, I believe you were out of time, but we'll give you a one minute for rebuttal. Thank you. Um, so as to the allegation that there is no contract, um, the existence of a contract is a federal question under the contracts clause. So even though it doesn't technically exist under state law as to one of the nine alleged contracts, um, that's not, um, inhibiting this complaint for moving forward to my knowledge. Um, the, as to instructions, um, when I wrote the complaint, I phrased it both as a facial challenge generally and an as applied challenge to one unit. So, um, if there are instructions relevant to one unit, um, great, but I think the facial challenge is presented in a way which shouldn't require, uh, detailed instructions. This law was imposed on everyone. Um, it was universally applicable. It's not hard to understand how it worked in practice. Um, so I think the facial challenge is appropriate. Um, another point would be the complaint alleges that all leases were impaired. Um, there shouldn't be this focus on one. Um, contracts clause claims, I believe, are inherently facial. The statute is imposed retrospectively. I've got plenty of leases in my name. They were all impaired. Um, my position is there doesn't need to be a payment default for the impairment to occur. The contract just needs to be rendered unenforceable by law. Um, the next point I'd like to reiterate is we hear a lot about existing tenants and invitations, but factually the invitation ends when the lease is defaulted. They do not remain existing tenants under state law. Um, and the complaint alleges trespass by the government. So that's what I assert the physical taking is. I don't know how deep we need to go into some parallel as applied physical taking, uh, theory here. Um, the fourth point as to compensation would be, uh, the NIC precedent requires compensation at the time of the taking. So I think a complaint which alleges or even admits that some compensation came a year late states the claim from a facial perspective. Um, as to the point that I would be eviscerating a bunch of tenant laws here, um, that is not true. Not a single law would have to fall. This whole case is about simply whether the government must ensure compensation in the case of, um, breaches of lease. So rent control stays. The government under my own theory can do an eviction moratorium whenever it wants. They just have to satisfy the public use clause and ensure compensation. Um, the other point would be as to Block v. Hirsch, I raised this, I think, in the opening of my brief. Um, I said that the Supreme Court held that to be a compensated taking, and they called it eminent domain in the case of, um, Hawaii. So I would submit that it's already established by the Supreme Court that Block v. Hirsch was a taking. It was a compensated taking. And there's a very big distinction between no taking and compensated taking. Um, and as to the ejectment statute again, yes, my final point is, um, the denial of the ejectment claim by Judge Epstein, which we seem to pretend doesn't exist. I contend that is state action. He's not an individual. He's a judge in state court. Um, his acts, whether it could have theoretically been overturned, um, still constitutes a state act. So thank you very much. Um, Mr. Seidlich, you were appointed by the court to, um, assist the appellant as amicus in this case, and the court thanks you for your assistance. We'll take the matter under advice.
judges: Wilkins; Rao; Edwards